UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DONTAE R. MORRIS,**

        **Petitioner,**

**v.**                                                          **Case No. 8:21-cv-1393-MSS-AAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

        **Respondent.**

_____/

**O R D E R**

Morris petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his two convictions for first-degree murder for which the state court sentenced him to death. (Doc. 1) An earlier order directed the Respondent to address in separate responses the following issues in the following order: (1) the timeliness of the petition, (2) whether any claim is unexhausted, procedurally barred, or not cognizable on federal habeas, and (3) the merits of the claims. (Doc. 7 at 1) The Respondent conceded that the petition is timely but moved to dismiss several grounds as either unexhausted, procedurally barred, or not cognizable on federal habeas. (Doc. 12) The Court granted-in-part and denied-in-part the Respondent's motion. (Doc. 16) Morris moves under Rule 60(b), Federal Rules of Civil Procedure, for reconsideration of the dismissal of Ground Four as procedurally barred. (Doc. 18) The Respondent files a response. (Doc. 19)

Because Rule 60(b) permits a district court to grant relief "from a final judgment, order, or proceeding," and the Court's order dismissing Ground Four is a non-final order, Rule 60(b) does not apply. However, a district court may reconsider an interlocutory order at any time

1

before entry of the final judgment. *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010) ("It is permissible for a district court to rescind its own interlocutory order."). *See also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

In Ground Four of his federal petition, Morris asserts that he was "denied the opportunity to fully present his cognizable, facially sufficient *Brady v. Maryland* claim at an evidentiary hearing in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." (Doc. 1 at 24) He contends that the state court's "decision denying [his] right to a hearing and allowing the denial of [his] rights to remain unremedied were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of facts . . . ." (Doc. 1 at 24)

Morris alleges that the prosecutor violated *Brady* by failing to disclose to the defense a video recording of a jail visit between Morris and his mother on November 10, 2011. (Doc. 1 at 25–26) He contends that the video recording contains the only evidence that he suffered from mental illness before trial. (Doc. 1 at 26) A mental health expert, who testified at trial, reviewed the video recording and changed his diagnosis of Morris from temporary psychosis and manic depression to schizophrenia. (Doc. 1 at 26) At trial, the prosecutor introduced evidence proving that, while in jail, Morris said, "I repent for killing." (Doc. 1 at 27) Morris contends that trial counsel could have used the video recording depicting that he suffered from mental illness while in jail to demonstrate that he did not knowingly make this statement.

(Doc. 1 at 27) He asserts that admission of the video recording would have changed the outcome of the guilt and penalty phases at trial. (Doc. 1 at 26–27)

During state post-conviction proceedings, after discovering notes by the prosecutor describing the video recording, post-conviction counsel requested a copy of the video recording from the prosecutor's office, and a records custodian certified that he could not locate the video recording in the office's file. (Doc. 1 at 25) An investigator, who worked for post-conviction counsel, discovered the video recording mis-labeled with the wrong date in the police department's file. (Doc. 1 at 25) Morris contends: "It is still unknown because a full hearing has not occurred whether or not this working version of the November 10, 2011, jail visit video saved as the November 24th video in [the police department's] files was ever disclosed to defense counsel." (Doc. 1 at 25) He asserts that he is entitled to an evidentiary hearing because "[a] material question of fact exists as to whether the State suppressed this [November 10, 2011] jail visit video and whether the State properly 'disclosed' this information in working form to the defense as required by *Brady*." (Doc. 8 at 34–35)

The Court's earlier order dismissed the claim as not cognizable on federal habeas and procedurally barred (Doc. 16 at 12–14):

> Morris asserts that the post-conviction court erred by not granting him an evidentiary hearing on his claim that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing to the defense an exculpatory video. (Doc. 1 at 24–27)
>
> In *Morris*, 317 So. 3d at 1071–72, the state supreme court denied the claim as follows:
>
> > . . . Morris claims that the post-conviction court erred by summarily denying as procedurally barred his claim that the prosecution withheld a working video of the November 10, 2011, jail visit in violation of *Brady v. Maryland*, 373 U.S. 83

3

(1963). We disagree and affirm the trial court's denial of relief.

 "An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination." *Matthews v. State*, 288 So. 3d 1050, 1060 (Fla. 2019). "A court may summarily deny a post-conviction claim when the claim is legally insufficient, procedurally barred, or refuted by the record." *Id.*

First, as the post-conviction court accurately noted, the existence of the November 10 video was known to the defense team prior to trial, so the claim is procedurally barred. A *Brady* claim is procedurally barred if the defense knew of the evidence prior to trial and could have addressed the discovery issue then. *See Jimenez v. State*, 265 So. 3d 462, 481–82 (Fla. 2018) (rejecting a *Brady* claim as procedurally barred where defendant had knowledge of a pre-deposition interview because it was mentioned in discovery materials and because defense counsel acknowledged the interview during trial). Both parties acknowledge that the State provided Morris with notice of six jail visitation videos in an amended notice of discovery filed in April 2012 but that these videos were unable to be downloaded or viewed due to a technical issue. The defense should have addressed these issues before trial or during trial through a *Richardson*[5] hearing for discovery violations. And in fact, as alleged by Morris in his original motion, trial counsel appears to have acknowledged the non-working videos during trial preparation. Accordingly, Morris's *Brady* claim is now procedurally barred.

[5] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

Further, even if Morris's claim was not procedurally barred, it is facially insufficient under *Brady*. "To establish a *Brady* violation, the defendant has the burden to show that: (1) the evidence was either exculpatory or impeaching;

4

(2) the evidence was willfully or inadvertently suppressed by the State; and (3) because the evidence was material, the defendant was prejudiced." *Davis v. State*, 136 So. 3d 1169, 1184 (Fla. 2014). However, "[t]here is no *Brady* violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." *Peede v. State*, 955 So. 2d 480, 497 (Fla. 2007) (quoting *Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993)). Morris's motion alleges that defense counsel had notice of the existence of the jail visit videos and knew that they were unable to view the videos. Reasonable diligence would seem to require that defense counsel seek to obtain a working copy of the video after learning that they were unable to download the video. Accordingly, this claim is without merit, and we affirm the post-conviction court's summary denial of relief.

The Respondent asserts that the claim is not cognizable on federal habeas and that the claim is procedurally barred because the state court's denial of the claim rested on a state procedural ground. (Doc. 12 at 24–25) Morris responds and characterizes the claim as asserting that the post-conviction court's denial of an evidentiary hearing on the *Brady* claim violated his federal right to due process. (Doc. 15 at 6–8)

"Under [the Eleventh Circuit's] precedent, [a] claim that the state court violated [a petitioner's] due process rights by failing to conduct an evidentiary hearing under Florida Rule of Criminal Procedure 3.850 and 3.851 on [a] post-conviction [ ] claim does not state a claim on which [the court] may grant habeas relief." *Carroll v. Sec'y, Dep't Corrs.*, 574 F.3d 1354, 1366 (11th Cir. 2009). Because "it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief," this Court cannot review Morris's claim. *Carroll*, 574 F.3d at 1365.

Even if the claim is cognizable on federal habeas, the claim is procedurally barred. The state supreme court denied the claim because Morris could have raised the claim before trial. *Morris*, 317 So. 3d at 1071. Fla. R. Crim. P. 3.851(e)(1) ("This rule does not authorize relief based upon claims that could have or should

have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Even though the state supreme court alternatively considered the merits of the claim, the ruling firmly rests on an independent and adequate state procedural ground. *Harris*, 489 U.S. at 264 n.10. *LeCroy v. Sec'y, Fla. Dep't Corrs.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) ("This Court has already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law.") (citing *Whiddon v. Dugger*, 894 F.2d 1266, 1267–68 (11th Cir. 1990)). Because Morris fails to demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the procedural bar, the claim is barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Accordingly, the Respondent's motion to dismiss Ground Four is **GRANTED**.

In his motion for reconsideration, Morris asserts that this Court erroneously determined that the *Brady* claim is procedurally barred. (Doc. 18 at 6–8) He contends that the state supreme court's ruling denying the claim as procedurally barred unreasonably applies *Brady*, unreasonably determines facts, and misapplies the state rule governing discovery. (Doc. 18 at 5–15) He further asserts that this Court erroneously deprives him of review by refusing to address the merits of the claim. (Doc. 18 at 15–23)

Morris incorrectly relies on the "unreasonable application" standard in Section 2254(d) to challenge the state supreme court's denial of the *Brady* claim as procedurally barred. Section 2254(d) applies to a state court's adjudication of a claim on the merits. 28 U.S.C. § 2254(d)(1) (stating a federal habeas petition "shall not be granted with respect to any claim **that was adjudicated on the merits** in State court proceedings unless the adjudication of the claim — resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States") (emphasis added).

"Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state *procedural* rule." *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006)(emphasis added). "When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, but only if the state procedural rule is regularly followed." *Siebert*, 455 F.3d at 1271 (citations omitted). When a state court incorrectly applies a state procedural rule, a federal habeas court may disregard the state procedural bar and review the merits of the claim. *Brown v. Sec'y, Dep't Corrs.*, 200 F. App'x 885, 887 (11th Cir. 2006)[1] (holding that "[procedural] grounds relied upon by the state court are inadequate[ if] they are based on an incorrect application of state procedural default law").

The state rule of procedure governing capital collateral relief prohibits post-conviction review of "claims that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.851(e)(1). The state supreme court applies this procedural bar to a *Brady* claim. *See State v. Riechmann*, 777 So. 2d 342, 363 (Fla. 2000) ("Riechmann's [*Brady*] claim on this issue, as it relates to the guilt phase, is procedurally barred because he could and should have raised it on direct appeal, since by trial's end he was aware of the statements.").

In his motion for reconsideration, Morris contends that he could not have raised the *Brady* claim on direct appeal because he first discovered on post-conviction that a records custodian at the prosecutor's office could not locate the video recording of the visit between Morris and his mother on November 11, 2011, that the police department retained a copy

---

[1] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

of the video recording but mislabeled the computer file that contained the video recording, and that no evidence proves that the prosecutor disclosed the video recording to the defense before trial. (Doc. 18 at 4, 9–11)

However, the record demonstrates that the prosecutor possessed the video recording and disclosed to trial counsel the existence of the video recording before trial. With reasonable diligence, trial counsel could have reviewed all discovery materials that the prosecutor delivered to the defense before trial and discovered whether the prosecutor also delivered a working copy of the video recording. If the prosecutor did not deliver a working copy of the video recording, trial counsel could have moved to compel disclosure of the video. If the trial court denied the motion to compel, Morris could have argued on appeal that the prosecutor's violation of the rule governing discovery procedurally prejudiced his defense. *See State v. Schopp*, 653 So. 2d 1016 (Fla. 1995).

In an amended discovery notice filed on April 16, 2012, the prosecutor disclosed to the defense the existence of the video recording of the jail visit on November 10, 2011 (Doc. 13-3 at 102) (bolding added):

> 1. SIX (6) DVD'S TITLED AS FOLLOWS:
>
> **A.**    **JAIL VISIT 11/10/11**
> B.    JAIL VISIT 11/23/11
> C.    JAIL VISIT 11/28/11
> D.    JAIL VISIT 12/6/11
> E.    JAIL VISIT 12/19/11
> F.    JAIL VISIT 1/30/12

In a competency evaluation report filed on May 18, 2012, a year-and-a-half before trial, a forensic psychologist described the six videos disclosed in the discovery notice (Doc. 13-3 at 105):

> I also reviewed, in preparation for the examination, a total of
> six DVDs provided by Assistant State Attorney Scott Harmon,
> which were reported to [contain] video visitation between the
> defendant and family members.

In a written response, trial counsel acknowledged that he read the letter and knew that the prosecutor had disclosed the video recordings to the forensic psychologist (Doc. 13-3 at 109): "I do note from your letter that you did have communications with the State and received videos and other materials from them."

In a competency evaluation report filed on May 18, 2012, a second forensic psychiatrist identified the video recording of the jail visit on November 10, 2011 as a source of information for his report (Doc. 13-3 at 119):

> Audio and video recordings of the defendant's jail visits dated
> November 10, November 23, November 28, December 6 and
> December 19, 2011 and January 30, 2012. On November 10,
> 2011, the defendant received a visit from a female. The audio
> portion of the recording was not decipherable.

Also, the report described the circumstances surrounding the visit (Doc. 13-3 at 123):

> No further problems were reported until November 10, 2011,
> when [Morris] was placed in restraints following a visit from his
> mother. He complained of deputies trying to kill him. After he
> was evaluated by jail mental health staff the impression was
> malingering and antisocial personality disorder. He was placed
> on direct observation status.

On January 25, 2013, the trial court held a pre-trial hearing on the defense's motion to exclude incriminating statements by Morris while in jail. (Doc. 13-10 at 34–79) During a direct examination of an employee at the prosecutor's office, the prosecutor asked about the content of the video recordings of the visits between Morris and his mother in jail in late October and early November of 2011, and trial counsel interjected that the prosecutor had not provided the video recordings (Doc. 13-10 at 61–63) (bolding added):

[Prosecutor:] Ms. Blevins, are you employed by the State Attorney's Office?

[Witness:] Yes, I am.

[Prosecutor:] And in late October, early November 2011, were you reviewing video visitations that Mr. Morris had with his mother and his grandmother?

[Witness:] Yes.

[Prosecutor:] In those video visitations did you observe conversations he had with his mother and his grandmother concerning spirituality and Christianity?

[Witness:] Yes, I did.

[Trial counsel:] Your Honor, excuse me for interrupting, and I'm rising simply to inquire because we don't recall having received or seen any copies of videos or reports of observations of videos of that type, and I'm inquiring. If I'm in error about that, then please correct me. But if we haven't, I'm in no position to try to cross-examine this witness on materials that have not been revealed to us.

[Court:] I'm not quite sure what you are saying. Are you saying you don't have them?

[Trial counsel:] To the best of our knowledge, Judge, I can't say that with one-hundred percent certainty. And I'm asking the State because neither of us remember seeing, hearing, and we have looked at everything.

[Court:] Mr. Harmon, are these reproduced?

[Prosecutor:] Let me ask Ms. Blevins. Apparently, we didn't give those to the defense.

[Court:] You did what?

10

| | |
|---|---|
| [Prosecutor:] | We did not give those to the defense. |
| [Court:] | Okay. So what's your objection? |
| [Trial counsel:] | My objection is we have no way to effectively cross-examine the witness. |
| [Court:] | I'll sustain the objection. I'll consider this another time, if need be. |

In an amended discovery notice filed on February 15, 2013, the prosecutor disclosed over 150 DVDs that contained video recordings of visitations at the jail. (Doc. 13-3 at 132–33) During a deposition of a psychologist on February 19, 2013, trial counsel acknowledged that he received the earlier discovery notice, filed on April 16, 2012, disclosing the existence of the video recordings of the visits in November of 2011 (Doc. 13-3 at 187–89):

| | |
|---|---|
| [Prosecutor:] | Okay. Did you have, did you have any conversations with his mother concerning his spiritual state during the time period of early November, late October? |
| [Witness:] | No. |
| [Prosecutor:] | And you haven't seen any of the video visitations between her — he and his mother during that time period? |
| [Witness:] | I have not. |
| [Prosecutor:] | No. |
| [Trial counsel:] | And Scott, just for the record, we received a notice of discovery on those dated 2/15. They were picked up today, so neither Dr. McClaine nor myself have seen them. Mr. Nelson has just e-mailed me that some of them were inaccessible because of some kind of program problem, so in any case, |

<table>
<tr><td>[Prosecutor:]</td><td>just for the record, we have not had those until today for her to review.</td></tr>
</table>

|  |  |
|---|---|
| | just for the record, we have not had those until today for her to review. |
| [Prosecutor:] | Well, for the record, we noticed you all before the *Arthur* hearing of many of those videotaped visitations that occurred. The ones — I'm sorry. We noticed you before the competency issue, when the competency issue came up in November of 2011. Remember I put that in my letter to you that we, we gave you discovery notice of several of the videotaped visitations that were occurring around early November 2011 and late October, so they were available and discovered to you then, so I just want to make sure the record's clear about that. |
| [Trial counsel:] | Well, I, I agree with you; you did do that, but there's an expanded version of that dated 2/15 — |
| [Prosecutor:] | Right. |
| [Trial counsel:] | — including a lot more materials, and we had not received the discs in the earlier — |
| [Prosecutor:] | Right. |
| [Trial counsel:] | — discovery. |
| [Prosecutor:] | Right, and those, yeah, I think the majority of those were — are outside that time period, though, but well, whatever. |
| [Trial counsel:] | Right. Okay. I'm sorry. |

Rule 3.220(b)(1)(C), Florida Rules of Criminal Procedure, required the prosecutor to disclose the existence of the video recording because the video recording contained statements by Morris to his mother:

> Within fifteen days after service of the notice of discovery, the prosecutor shall serve a written discovery exhibit which shall disclose to the defendant and permit the defendant to inspect,

> copy, test, and photograph the following information and
> material within the state's possession or control . . .: any written
> or recorded statements and the substance of any oral statements
> made by the defendant, including a copy of any statements
> contained in police reports or report summaries, together with
> the name and address of each witness to the statements[.]

*See also Jones v. State*, 32 So. 3d 706, 710 (Fla. 4th DCA 2010) ("The prosecutor has a duty to disclose in discovery 'any written or recorded statements and the substance of any oral statements made by the defendant.' This duty 'extends to a defendant's statements made to a witness who is not an agent of the state.'") (citations omitted).

After the prosecutor disclosed the existence of the video recording of the visit on November 10, 2011, trial counsel had the duty to request that the prosecutor permit the defense to inspect and copy the video recording. *Durrance v. State*, 44 So. 3d 217, 221 (Fla. 4th DCA 2010) ("[T]he state fulfilled its obligation under the rule by disclosing the trial testimony in its supplemental response to defendant's request for discovery. The defendant has the burden of inspecting and copying the trial testimony."); *Denny v. State*, 404 So. 2d 824, 825 (Fla. 1st DCA 1981) ("It is undisputed that the existence of the photographs (or negatives) was properly disclosed long before trial and that they were continuously available for inspection or copying by the defense. However, the defense attorney never contacted the prosecutor to exercise his right to copy or inspect.") (citation omitted).

If the trial prosecutor refused to provide trial counsel a working copy of the video recording to inspect and copy, Morris could have moved to compel disclosure of the video recording. If the trial court denied Morris's motion to compel, Morris could have argued on direct appeal that the trial court erroneously denied the motion. *Powell v. State*, 912 So. 2d 698, 702 (Fla. 2d DCA 2005) (reversing on direct appeal because the prosecutor violated the rule governing discovery by failing to disclose statements by the defendant). On appeal, the

prosecutor has the burden to demonstrate that a discovery violation is harmless. *Powell*, 912 So. 2d at 701 ("[I]t is the State's burden to establish that a discovery violation is harmless error."). *Schopp*, 653 So. 2d at 1020–21, requires the prosecutor to demonstrate a lack of procedural prejudice:

> In determining whether a *Richardson* violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination every conceivable course of action must be considered. If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.

Morris could have argued on direct appeal that the prosecutor's failure to disclose a working copy of the video recording procedurally prejudiced the defense because he would have used the recording to impeach his incriminating statement in jail. *See Palmes v. State*, 397 So. 2d 648, 653 (Fla. 1981).[2]

Because trial counsel could have moved to compel the disclosure of the video recording of the jail visit on November 11, 2010 before trial, and argued on direct appeal that the trial court erroneously denied the motion to compel, the post-conviction court did

---

[2] After the trial court ruled admissible the incriminating statement by Morris in jail, "I repent for killing," trial counsel moved to admit evidence, including the video recordings of the jail visits, to rebut the voluntariness of Morris's statement. (Doc. 13-10 at 87–90)

not incorrectly apply the state procedural default rule to bar the *Brady* claim on post-conviction. Fla. R. Crim. P. 3.851(e)(1). *Riechmann*, 777 So. 2d at 363. *See also Rhodes v. State*, 986 So. 2d 501, 507 (Fla. 2008). *United States v. Agurs*, 427 U.S. 97, 103 (1976) (holding that *Brady* applies to "the discovery, **after trial**, of information which had been known to the prosecution but unknown to the defense.") (bolding added).

In his motion for reconsideration, Morris argues that this Court has a duty to independently review the merits of the *Brady* claim because the state supreme court adjudicated the claim on the merits. (Doc. 18 at 15–16) He argues that, because the state supreme court alternatively reached the merits of the *Brady* claim, this Court may ignore the procedural default and also reach the merits of the claim. (Doc. 23)

However, a federal court may disregard a state procedural bar only if a higher state court ignores a lower state court's imposition of a procedural bar and addresses only the merits of a claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.") (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

In Morris's case, the state supreme court did not ignore the post-conviction court's imposition of the procedural bar. The state supreme court instead ruled that the *Brady* claim was procedurally barred and *alternatively* ruled on the merits. *Morris*, 317 So. 3d at 1071 ("[E]ven if Morris's claim was not procedurally barred, it is facially insufficient under *Brady*."). *Harris*, 489 U.S. at 264 n.10 (citation omitted), clarified that a state court's ruling

firmly rests on a procedural bar, even if the state court alternatively reaches the merits:

> Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

Because the state supreme court did not ignore the state procedural bar by alternatively ruling on the merits, this Court cannot disregard the procedural bar. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.").

Lastly, in his motion for reconsideration, Morris argues that the earlier order deprives him of "any available State corrective process to allow presentation of his fully exhausted, substantive *Brady* claim." (Doc. 18 at 23) A petitioner must exhaust his remedies in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)(i), (ii). Because Morris technically exhausted the *Brady* claim in state court, lack of exhaustion does not bar federal review of the claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Instead, the state court's denial of the *Brady* claim on an independent and adequate state procedural ground bars review. *Coleman*, 501 U.S. at 750.

Also, the earlier order does not entirely deprive Morris review of his claim. In Ground 2(g) of his federal petition, Morris asserts that trial counsel was "deficient for failing to obtain

a working version of the November 10, 2011, jail visit video, which contained incredibly probative mental health evidence." (Doc. 1 at 8, 14–16) The Respondent does not assert a procedural defense to the ineffective assistance of counsel claim (Doc. 22 at 103–06), and this Court will review the merits of the claim. *See Taylor v. State*, 62 So. 3d 1101, 1116 (Fla. 2011) ("[B]ecause Taylor ultimately asserts a discovery violation before trial, this claim should have been raised [ ] during trial, not in a postconviction motion pursuant to *Brady* . . . . The only cognizable claim here, therefore, is that trial counsel was ineffective for failing to request a *Richardson* hearing on the alleged discovery violation.") (citations omitted).

Because Morris fails to demonstrate that the earlier order erroneously dismissed Ground Four, his motion for reconsideration (Doc. 18) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on September 7, 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

17